## JOHN ZEBLEY, JR., v. JOHN W. STOREY.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued March 21, 1887—Decided January 3, 1888.

1. In an action for malicious prosecution, it is error to admit on part of the plaintiff evidence showing the acts or negligence of the prison officials while he is in custody upon a criminal charge preferred by the defendant.

2. The charge upon which the plaintiff in such action had been arrested, being a mere misdemeanor and lacking the element of public importance, it is not error to admit the record of the plaintiff's release from imprisonment upon a writ of habeas corpus, as evidence of the determination of the alleged malicious prosecution.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.; CLARK, J., absent.

No. 73 January Term 1883, Sup. Ct.; originating in No. 68 January Term 1870, Sup. Ct.

This case began with an alias summons in case, issued from the Supreme Court at nisi prius on September 30, 1869, in a suit by John W. Storey against John Zebley, Jr., wherein the narr. declared for a malicious prosecution of the plaintiff by the defendant, under a charge of obtaining goods under false pretences, and averring the determination of the criminal prosecution by a discharge of the plaintiff after a hearing upon a writ of habeas corpus. Under the plea of not guilty, an issue was joined which eventually on September 22, 1875, came on for trial in the Court of Common Pleas, No. 3, of Philadelphia county, into which court the case had gone for trial under the provisions of the new constitution, and a nonsuit was then entered against the plaintiff. On June 19, 1878, the court made absolute a rule to take off said nonsuit, "on payment to defendant of costs of September Term 1875, and agreement by plaintiff to admit in evidence notes of Alderman Beitler's testimony, and of other witnesses for the defendant who cannot be produced at next trial," which agreement was filed and said costs paid.

At the trial on November 14, 1881, it appeared that on July 26, 1869, John Zebley, Jr., of the firm of John Zebley, Jr., & Co., in the wholesale notion business, had made an information before Alderman Beitler charging John W. Storey with the offence of obtaining goods under false pretences, after having been advised by Mr. Joshua R. Rhoads, his attorney, upon a full statement to him of the facts, "that it was clearly a case of obtaining goods under false pretences," etc. Storey was arrested upon the warrant issued, and on a hearing, committed to jail in default of bail. After remaining twenty-seven days in prison, he obtained a hearing upon a writ of habeas corpus and was discharged. The discharge was resisted by the prosecutor.

In the plaintiff's case: The plaintiff testifying, having stated the circumstances of his arrest and his failure to find bail, said: "Went back to the den at Fifth and Chestnut and remained there until the van went down to prison in daylight, with two prisoners, one drunk and spewing. I went down in

daylight to prison into cell 149." Plaintiff proposed to show condition of cell, and all that occurred there, and his sur. roundings there. Objected to. Objection overruled. The witness then testified as to his discomforts while in prison.[1]

The plaintiff offered in evidence an exemplification of the record of the Court of Quarter Sessions upon the proceedings on the writ of habeas corpus. Objected to, on the ground that the record showed no determination of the prosecution, and on the ground of irrelevancy. Objection overruled and evidence admitted.[2]

In the defendant's case: The defendant testifying, having denied that he had ever said that if Storey did not pay he would keep him in prison, as alleged by witness McFarland, proceeded: "I saw Mr. Storey again the day he was taken to the old Quarter Sessions room, for hearing on writ of habeas corpus; Judge Brewster presiding. Mr. Ruddiman conducted the hearing on the part of the commonwealth. He was not my counsel." Q. Can you say whether or not Mr. Ruddiman said at that time to the court, that Storey had had his opportunity and ought to go to prison? Objected to. Objection sustained.[3]

William F. McFarland, called for the defendant:

Q. Were you not, at an examination before Mr. Reeves, asked by Mr. Gerhart: "Did he, Storey, not say, at the conversation in Franklin Square, that he had authority to buy from his brother, but that he had no written authority, as he did not think it necessary?" and did you not answer, "I do not recollect anything of that conversation taking place there at that time;" and if you made such answer, why did you not then say that Mr. Zebley said, in conversation between him and members of the firm, that Mr. Storey had told him, Zebley, that he had no written authority?"

Objected to by plaintiff; objection sustained.[4]

Mr. Joseph R. Rhoads, attorney, testified as to his being advised with by the defendant upon the subject of Storey's offence: "The conclusion of my advice to him was that the firm could not collect the bill, and that in my judgment as a lawyer, it was clearly a case of obtaining goods under false pretences, and that it was his duty as a merchant—" Counsel for plaintiff objected to this testimony as not being legal

advice ; the conversation is as to public duty. Offer, to prove the whole of the conversation between Mr. Rhoads and Mr. Zebley. The court ruled that the witness should be confined to what his advice was as to defendant's rights, not as to his public duty.[5]

Mr. Joseph T. Ford, attorney, called for defendant; had attended at a hearing before Alderman Beitler on behalf of Storey. Q. Do you know at whose instance Mr. Storey was brought up from prison the second time? Objected to. The question was to be followed by the inquiry whether witness knew it was at the instance of Mr. Zebley or Mr. Rhoads. Objection sustained.[6]

The deposition of William F. McFarland was then offered in evidence by defence, in which deposition among other things he testified as follows : " He said that Jacob Riegel & Co. had brought suit against his brother, but that he did not know whether his brother would pay or not, as they had not been on good terms for years. I mentioned this next day to Mr. Zebley;" said witness, having already testified that what he had said to Zebley was not true. Objected to. Objection sustained.[7]

The defendant then offered the notes of the testimony of John M. Cummings, deceased, taken at a former trial.

The plaintiff objected to that portion of the testimony in which the witness stated as follows : " He told me his wife was a daughter of William Means, and among other things he asked me if I had seen my brother, the doctor, lately. I said I had not, and he then said ' The next time you see or write to Jim tell him you sold a bill of goods and have become acquainted with William Storey, and he will remember me.' There was present Mr. Ivins, at his desk, within a few feet of where we were sitting. The next afternoon he came in and said he was going to leave the city that night; the goods were charged and shipped to William Storey, Curlsville. I sold him another bill November 27, 1868. Nothing particular occurred then, goods were charged and shipped as before. He did not tell me then he was John W. Storey buying for William Storey." Defendant replied that he offered the said portion of the notes of testimony, under the order of court made when the nonsuit was taken off, and as having been particularly

Charge of Court below.

called to the attention of the plaintiff himself then on the witness stand, and denied by him. The court sustained the objection.[8]

The court, WILLIAM H. YERKES, J., charged the jury as follows:

On the 26th day of April, 1869, John W. Storey was arrested upon a warrant issued by alderman Beitler. That warrant was based upon an affidavit made by Mr. Zebley; and Mr. Storey had a hearing before the alderman, and was committed without bail, and remained in prison twenty-seven days. Now he comes here and brings a charge that that was a false and malicious arrest. He was discharged upon a writ of habeas corpus, after twenty-seven days' imprisonment; and he brings this suit for a malicious prosecution. To sustain his suit he must convince you that the criminal proceding against him was without probable cause, and was with malice. Malice may be inferred from the want of probable cause, but you must find that both malice and want of probable cause are on his side.

Now, the charge brought against him is, not of attempting to defraud his creditors, or of concealing his property, but that he purchased goods from this plaintiff upon false representations with intent to defraud; and it is for you to say whether, under all the evidence in this case, Mr. Zebley had reason to believe, from his own knowledge, or rather what was told him by Mr. Storey, for in this case, I presume that he bases his entire case upon the information derived from Mr. Storey with certain corroborating circumstances, that he was guilty of this offence. Now he upon one side has testified as to that. And upon the other side Mr. Storey has testified as to the conversation between them, upon which this action of Mr. Zebley was based. There were no other witnesses except those two. You have heard the testimony of both. I will not go over it. I will only read a sentence or two. Mr. Storey said: "I then told him"—you remember the conversation about the power of attorney—"I then told him I had verbal authority. He and I had a conversation about my authority. He said I had no power; I contended I had. He said he could not collect his money from William Storey without a written power of attorney." That is the testimony of John W. Storey. The testimony of Mr. Zebley is: "I asked him about how the stock

came to be transferred to him. He said he consulted an attorney and found the goods were liable to be attached. I remarked, 'How were they liable?' He said, 'I have no power or authority from my brother to use his name.' Nothing was said about written authority."

It is upon that, if I understand Mr. Zebley and if I understand Mr. Rhoads, that they base their belief that he acted without authority. You have the affidavit; and it is said, I think, in the concluding phrase of that affidavit: "falsely representing the goods to be for his brother," or "falsely representing he had authority from his brother." That is the direct testimony upon that ground. If he did say that his brother had given him no authority, or power, of any kind, why that would be probable cause for believing that he was guilty of a criminal course; that is, together with other circumstances, cause, if the debt was long unpaid.

That is for you to find and pass upon, whether the story as told to you by Mr. Storey, or the story told to you by Mr. Zebley is true. If you find that Mr. Storey's story is true, that he told him he had no verbal authority, then all the case depending upon that falls to the ground. That is the principal point in the case for you to pass upon. Both sides contend that they are corroborated, or that there are facts in the case which corroborate their stories. Upon one side, the plaintiff contends that he, having made representation, and obtained goods upon that representation, it is improbable that he, himself, voluntarily and gratuitously, would state he had no such authority; and he also contends that the receipt and draft, or rather the order upon William Storey, is evidence that such a story was not told, and that, in the subsequent proceedings, a suit against William Storey was brought on the 7th of June, following, by Mr. Zebley suing Mr. Storey is also evidence of the same fact.

On the other hand, the defendant contends that he is corroborated by a statement made to Mr. Cummings about the same time, or afterward, perhaps; but, still, it is a corroboration of what he said; that is, that he told Mr. Cummings he had no authority from his brother. And, especially, do they contend that the plaintiff's selling the store out without the knowledge of his brother, and providing for himself, is a corrobora-

tion that the store was his; and it is likely he told the story to Mr. Zebley.

All these facts upon both sides are for you, and it is for you to determine upon them. It is not necessary that Mr. Storey should have been guilty of that offence, but only whether Mr. Zebley had probable cause; that is, had he information upon which he had a right to rely? If he had, then he had a right. Whatever would induce a prudent man to believe Mr. Storey had been guilty of an offence in obtaining the goods, gave him this right to arrest him. The question of his guilt or innocence is a matter with which you have nothing to do.

As to the other matter in regard to the attorney's advice, it is a point of law that when a client goes to an attorney or magistrate, and lays before him a truthful and full statement of the case, and upon that statement the attorney or the magistrate advises a prosecution, then there could be no suit maintained for malicious prosecution.

That is all I have to say, I think, upon the law of the case.

The only other question is in regard to damages. They are for you to assign, if you find that Mr. Zebley had no probable cause. It is not for compensation; but the law gives what is called vindicatory damages for such an offence as this. It is for you to consider what sum Mr. Storey should receive for the false arrest, if it was a false arrest.

I am asked to charge you upon many points; I think I have answered them all, except the last.

The sixth point presented by the defendant is as follows:

A discharge of the plaintiff upon a writ of habeas corpus, after hearing thereon in the Court of Quarter Sessions, is not such a final determination of the prosecution against him as will entitle him to maintain his present action, and the verdict of the jury must be for the defendant.

Answer: This I refuse.[9]

The verdict of the jury was for $2,750 in favor of the plaintiff, and judgment being entered, the defendant took this writ assigning for error:

1, 2. The admission of the plaintiff's offers.[1] [2]

3–8. The rejection of the defendant's offers.[3] to [8]

9. The refusal of the defendant's sixth point.[9]

*Mr. William H. Ruddiman*, for the plaintiff in error:

*Mr. B. H. Brewster* (with him *Mr. George Junkin*), for the defendant in error:

OPINION, MR. JUSTICE PAXSON:

This was an action on the case for a malicious prosecution, and has about it the unmistakable flavor of antiquity. It was twice tried in the district court by our late and lamented colleague Chief Justice SHARSWOOD, then the president judge of that court. After the adoption of the present constitution, the cause was certified to the Common Pleas No. 3, where it was tried before the late Judge Yerkes. The first trial resulted in a verdict for the plaintiff, which was set aside and a new trial granted. At the second trial there was a disagreement of the jury. The third resulted in a verdict for the plaintiff and a judgment upon the verdict. It is to this judgment this writ of error was taken.

The first assignment alleges that the court erred in overruling the defendant's objection to the plaintiff's offer to show the condition of the prison cell and all that occurred there, and his surroundings there.

The plaintiff was arrested upon a charge of obtaining certain merchandise from the defendant's firm by means of false pretences. At the hearing before the alderman he was committed to the county prison in default of bail, where he was confined for twenty-seven days, when he was brought up on a writ of habeas corpus before Judge Brewster and discharged. Upon the trial below the plaintiff was allowed to testify, against the objection of the defendant, as to his treatment while there. He said: "When I went to prison I received two very narrow blankets and tin dishes—no knife or fork; I slept on the floor; I was there twenty-seven days. . . . . . Got nothing to eat from time I left boarding-house till next morning—room was filthy. Stool with no cover to it; the men made water in it at night and it ran over." The witness had previously said that he had been sent down in the van with two other prisoners, " one drunk and spewing."

This testimony could hardly fail to inflame the minds of the jury and enhance the damages. And if the treatment referred to had been the act of the defendant he would have no reason to complain of the admission of the evidence. But it is a mat-

ter with which he had nothing to do. He is not responsible for the way in which the county of Philadelphia, acting through its officials, treats persons confined in the county prison. He is responsible for the unlawful restraint of the plaintiff's liberty, if he has so restrained it, but it would be unreasonable, as well as unjust, to hold him liable for the acts or conduct of public officials over whom he had no control. We are of opinion that it was error to admit this testimony.

The second and ninth assignments of error may be considered together. The first alleges error in admitting in evidence the record of the Quarter Sessions upon the habeas corpus proceeding. The second 'was to the refusal to affirm the defendant's last point. The point was as follows: " A discharge of the plaintiff upon a writ of habeas corpus, after hearing thereon in the Court of Quarter Sessions, is not such a final determination of the prosecution against him as will entitle him to maintain his present action, and the verdict of the jury must be for the defendant."

The question raised by this point has never yet been decided by this court, to my knowledge. Under such circumstances, it would seem natural to suppose that counsel presenting it would give us the benefit of their aid and research in disposing of it; on the contrary, it is thrown in upon us, not only without an authority pro or con, but without an argument. Yet we are asked to decide it. We might perhaps, decline to do so, but as the question lies directly in the path of another trial, we will consider and dispose of it.

The eleventh section of the habeas corpus act of February 18, 1785, 2 Sm. L. 275, provides as follows : " And for preventing unjust vexation by reiterated commitments for the same offence, *Be it enacted*, That no person who shall be delivered or set at large upon a habeas corpus shall, at any time thereafter, be again imprisoned or committed for the same offence, by any person or persons whatsoever, other than by the legal order and process of such court wherein he or she shall be bound by recognizance to appear, or other court having jurisdiction of the cause ; and if any other person or persons shall knowingly, contrary to this act, recommit or imprison, or knowingly procure or cause to be recommitted or imprisoned, for the same offence or supposed offence, any person delivered

or set at large as aforesaid, or be knowingly aiding or assisting therein, then he or they shall forfeit to the prisoner or party grieved, any pretence of variation in the warrants of commitment notwithstanding, the sum of five hundred pounds, to be recovered by the prisoner or party grieved in manner aforesaid."

It will be seen that the act prohibits, under a heavy penalty, the re-arrest or imprisonment for the same offence of a person discharged upon habeas corpus, except by " the legal order and process of such court wherein he or she shall be bound by recognizance to appear, or other court having jurisdiction of the cause." A discharge upon habeas corpus is not necessarily, and in all cases, the end of the prosecution. The public prosecutor, for public reasons, and with leave of the proper court, may send a bill to the grand jury, even in a case where the prisoner has been discharged upon habeas corpus. This view of the act was evidently taken by the late Judge King, of Philadelphia, in the case of Commonwealth v. Ridgway, 2 Ash. 247, where he said, in discharging the relator: " I rejoice, however, that our judgment is not conclusive of the subject. The sole effect of this decision is, that, in the present state of the evidence, we see no sufficient cause to hold the defendant to bail. It is still competent for the proper public officer, particularly in a different state of the evidence, to submit the case to the grand jury. That respectable body are entirely independent of us; they can form their own views of the prosecutor's case, and may, if their judgment so indicates, place the defendant on his trial; we at present do not see adequate cause to induce us either to restrain him of his liberty, or compel him to give bail to answer. He is discharged." It will be noticed that there is no indication from Judge King that a private prosecutor could procure the recommitment of a person so discharged. It must be done by the public prosecutor and manifestly for a public purpose.

The nearest approach to an authority in this state is the ruling of the late Justice BELL at nisi prius, in Charles v. Abell, Brightly 131, where he held that a discharge on habeas corpus puts an end to a criminal prosecution, so as to enable the defendant therein to maintain an action for malicious prosecution. It was said by that learned judge: " It must be acknowl-

edged that the law on this subject has undergone many alterations in modern times. It seems to be now agreed, that if a grand jury ignore the bill, it is sufficient to maintain the action. But this rule has been still further modified, and it is settled that if a party is brought before an examining magistrate and discharged, though the proceeding might be again renewed, still, in point of law, that prosecution is ended, and the party may maintain the action for malicious prosecution. There is a precedent for a declaration in Chitty's Pleadings, in an action brought under such circumstances. There is no difference in point of principle and practice between a discharge by a committing magistrate and a discharge by a judge who examines the case upon habeas corpus. It as effectually puts an end to the prosecution as if the defendant were discharged by a magistrate, although a new charge may be afterwards made." The practice of commencing suits for a malicious prosecution, after a hearing and discharge by a committing magistrate, appears to have passed unchallenged in this state. There are many such cases in our reports. It is sufficient to refer to Orr v. Seiler, 1 Penny. 445; Bernar v. Dunlap, 94 Pa. 329. It would be unreasonable to give greater effect to the discharge of a prisoner by a committing magistrate, who is ordinarily a layman, than to a discharge upon habeas corpus by a judge of a court of record.

The offence with which the plaintiff was charged was a mere misdemeanor. It lacks every element of public importance. Such prosecutions are seldom resorted to, except to collect a debt, and one can hardly imagine an instance in which a public prosecutor would ever interfere in such a case where the offender had been discharged upon habeas corpus. And as the private prosecutor may not re-arrest the party, such discharge, for all practical purposes, is an end of the case. If, therefore, a suit for malicious prosecution may not be brought after a discharge upon habeas corpus, it can never be brought, no matter how gross may have been the abuse of legal process. Speaking for myself, I would do nothing to impair the right to bring such actions. The fear of the rebound has saved many an unfortunate debtor from unjust prosecution. We are of opinion that the learned judge below committed no error in refusing the defendant's point. It follows that it was not

error to permit the record of the habeas corpus to go to the jury. It was the proper and legal way of showing the plaintiff's discharge.

The third assignment is not sustained. The matter referred to was irrelevant, and was brought out upon the cross-examination of plaintiff by defendant's counsel; as it had nothing to do with the case he was bound by the answer, and was not entitled to call a witness to contradict it. Whatever Mr. Ruddiman may have said on the occasion referred to, his client was not responsible for it.

I am unable to see why the question asked the witness, McFarland (see fourth assignment), should not have been allowed, though the matter is by no means clearly stated. McFarland was examined as a witness for the plaintiff. He was subsequently called by the defendant and was asked whether he had not testified in a particular way upon some prior occasion. The object was to show that the witness told a different story upon another occasion. While not important, I think the witness should have been allowed to answer the question.

We see no error in the fifth assignment. Mr. Rhoads was allowed to testify to the advice he gave his client as to his legal rights. His advice in regard to the duty of his client, as a merchant, to prosecute, was not competent evidence.

The sixth assignment is not sustained. It was immaterial at whose instance the plaintiff was brought up from prison the second time. Nor do I find any evidence to warrant the assertion that the plaintiff had testified that he was brought up at the instance of the defendant.

We think it was error to overrule the offer by defendant's counsel of the deposition of William McFarland, taken by defendant. The witness was examined by both sides, and his testimony showed at least that he did not always tell the same story. The deposition was offered to show this, and, under the circumstances, ought to have gone to the jury.

The deposition of John M. Cummings, a deceased witness, who had been examined at a former trial, was offered in evidence in accordance with some agreement of counsel or order of court. The court excluded a portion of the deposition, which is the subject of the eighth assignment. The only

ground claimed for the exclusion of the omitted portion is that it was immaterial. This, if true, would be sufficient. But the deposition tends at least to show that the plaintiff was passing himself off for William Storey. This is not very important, but it was competent, and we think should have been admitted.

> The judgment is reversed and a venire facias de novo awarded.