# September Term, 1902.

[No. 4308.]

FRENCH (LORD ET AL., ADMINISTRATORS, SUBSTITUTED) v. GUYOT ET AL.

1. **Appellate Practice—Exceptions—Judgments.**

In order to have an appellate court consider the question as to whether or not the evidence is sufficient to sustain a judgment an exception to the judgment must be taken by bill of exceptions. Such exception entered on the journal of the clerk is not sufficient.

2. **Appellate Practice—Instructions.**

Where there is no certificate by the trial judge or the clerk and no recital in the record or bill of exceptions from which the appellate court can conclude that the instructions contained in the record proper or in the bill were all the instructions given by the court, the appellate court will not consider assignments of error which relate to giving or refusing instructions, but will presume that the court properly applied the law to the facts upon the trial.

3. **Appellate Practice—Instructions—Exceptions.**

Where an instruction contains more than one proposition of law a general exception thereto does not entitle the party to have the instruction reviewed in the appellate court.

4. **Appellate Practice—Instructions.**

Where the record recites that the instructions which appear therein were filed in the clerk's office, but the instructions were not signed by the judge, and no indorsement appeared thereon indicating the action of the court, it will not be presumed that the judge filed all the instructions given and refused.

5. **Same.**

The appellate court can review instructions which appear either in the record or bill of exceptions with proper indorse-

ments and bearing the signature of the judge, if proper objections and exceptions are preserved thereto, but where it does not appear either from the record or bill of exceptions that the instructions contained therein are all the instructions given the appellate court will not consider exceptions or objections thereto.

**6. Pleading—Damage—Wrongful Attachment.**

In an action for damages for malicious prosecution and wrongfully attaching plaintiffs' property, a complaint which alleged that defendant having unlawfully come into possession of plaintiffs' note after maturity and after it had been paid, maliciously and for the purpose of injuring plaintiffs caused an action to be brought on said note against plaintiffs and maliciously and without cause levied an attachment upon plaintiffs' property, whereby plaintiffs were compelled to incur expense in resisting said action and in procuring a dissolution of the attachment, and were prevented from selling or disposing of said property, and were damaged and injured in their reputation and business credit, was sufficient to state a cause of action.

**7. Malicious Prosecution—Damage to Reputation and Credit—Evidence.**

In an action for damage for malicious prosecution and attachment of plaintiffs' property, it is competent to show as an element of damage, injury to plaintiffs' reputation and business credit.

**8. Malicious Prosecution—Incumbrance of Property—Evidence.**

In an action for damage for malicious prosecution and attachment of plaintiffs' property, it is competent to show damages sustained by reason of plaintiffs being unable to dispose of the property attached.

**9. Malicious Prosecution — Evidence — Defendant's Financial Standing.**

In an action for damages for malicious prosecution and attachment of plaintiffs' property, it is competent to show defendant's ability to respond to judgment, and evidence as to defendant's wealth and financial standing is admissible.

**10. Evidence—Reputation.**

To prove injury to business credit and reputation by reason of a wrongful attachment, it is competent for a witness to testify as to what he has heard other people say in reference to the attachment suit as affecting the reputation and business standing of the attachment defendants.

**11. Evidence—Discretion of Court.**

It is within the discretion of the trial court to admit or reject evidence offered after the case is closed.

*Appeal from the District Court of Pueblo County.*

Messrs. WHITFORD, WHITFORD & MAY, for appellants.

Mr. HENRY A. DUBBS, for appellees.

Mr. JUSTICE STEELE delivered the opinion of the court.

In December, 1893, N. E. Guyot and S. H. Guyot executed and delivered to Sarah J. Emmons their certain promissory note for the sum of five thousand dollars, payable in December, 1894. Suit was brought upon this note in the district court of El Paso county, in March, 1895, and at the same time writs of attachment were issued and levied upon the property of the defendants. Subsequently the plaintiff, S. J. Emmons, directed a dismissal of the suit, declaring that the suit had been brought without her authority and that the promissory note had been paid. When the motion was made to dismiss the suit, Julia B. French was, upon her statement that she was the owner of the note against the Guyots, substituted as party plaintiff. The suit was subsequently, and in 1896, dismissed. In August, 1896, N. E. Guyot and S. H. Guyot brought suit in the district court within and for the county of Pueblo against Julia B. French for damages in the sum of twenty thousand dollars. Demurrer was interposed to this complaint and sustained, and on the 6th of April, 1897, their amended complaint was filed, in which is alleged, among other things, the execution and delivery of the note mentioned herein to Sarah J. Emmons; the payment thereof before maturity; and that after the maturity of the note, the said defendant, having unlawfully come into the possession of the same, did, for the purpose of injuring plaintiffs in their business operations and damaging them in

their credit, and in wanton and reckless disregard of the rights of the plaintiffs, unlawfully and without authority, maliciously and without probable cause, cause to be instituted the action which is mentioned herein; and that the said Julia B. French did, at the same time, maliciously and without probable cause, cause writs of attachment to be issued and levied upon various mining properties and other real estate of the plaintiffs situate in the counties of El Paso and Pueblo, and state of Colorado. The ninth allegation of the plaintiffs' amended complaint is as follows: "Plaintiffs allege that they were compelled to and did lay out and expend the sum of six hundred dollars for attorneys' fees and other necessary expenses in resisting the action instituted by defendant as aforesaid, and procuring a dissolution of the said attachment; that the levy of said writs of attachment for a long time embarrassed and incumbered these plaintiffs in the management and disposal of all their property so levied upon as aforesaid, and prevented plaintiffs from making sales or disposing of the same in any way; and that the said action of the defendant harassed, vexed, and annoyed plaintiffs, and likewise damaged and injured them in their reputations and business credit, all in the sum of twenty thousand dollars. To this complaint the defendant answered, denying the allegations of the complaint and alleging among other things that the said note was delivered to her by Sarah J. Emmons as collateral for an indebtedness. She admits that the suit was instituted; that the property of the defendants was levied upon; and denies that she maliciously caused the suit to be instituted. She further says that she fully explained to her attorneys her case, as she was advised, and concealed from them no material fact, and that in all that she did in reference to said suit she was advised to do by them, and that in all she did

she was advised that she was authorized to do so by law, and that she acted without malice and with an honest purpose. In an amendment to her answer she alleges that she conducted the correspondence leading up to the bringing of the said suit, for and on behalf of the said Sarah J. Emmons and as her agent and representative, and not in her own behalf; that in so doing she acted without malice and simply as the agent of the said Sarah J. Emmons.

The trial occurred in February, 1900, and resulted in a verdict and judgment in favor of the plaintiffs for the sum of $4,600; from which judgment the defendant appeals.

The certificate of the judge to the bill of exceptions states that the bill contains "all the evidence offered or introduced on behalf of each or all of the parties to said action upon the trial thereof, save as shown by the stenographer's certificate to be missing." The stenographer's certificate states that the bill contains a "true, perfect, full, and complete transcript of the evidence, except exhibits numbers 11, 16, 17, 23, 34, 47, 59 and 91 (which I have been unable to find since the trial), also part of 90." Instructions appear in the record and in the bill of exceptions. The certificate of the clerk dated September 4, 1900, is as follows: "I * * * certify the above and foregoing to be a true, perfect, and complete copy of all the files and orders of court, together with the original bill of exceptions." There is no certificate appended to the bill or to the transcript certifying that it contains all of the instructions given by the court, or that it contains instructions offered and refused.

Each and every instruction is excepted to in the following language: "To the giving of which instruction, the defendant, by counsel, then and there duly excepts." It nowhere appears from the bill

that objection was made to any instruction given. The same form was used upon the refusal of the court to give the instructions which appear in the bill. The bill does not contain an exception to the judgment, but an exception to the judgment appears in the journal entry of the clerk.

It has been uniformly held by this court that an exception to the judgment by bill is necessary, and that a journal entry of the clerk noting an exception is not sufficient to warrant the court in considering the question as to whether or not the evidence is sufficient to support the finding. Indeed, in the case of *Colorado Fuel Company v. Maxwell Grant Company*, 22 Colo. 72, it was held that, "Under the uniform decisions of this court and the court of appeals, an exception to the final judgment, properly preserved and brought into the record by a bill of exceptions, is essential to obtain a review of the judgment upon the facts, or the law as applied to the facts.  *   *   * Upon this record, therefore, we are limited to the consideration of those assignments based upon exceptions, duly preserved, to the rulings of the trial court, upon the admission and rejection of testimony."

We cannot determine from an inspection of the record as a whole that the instructions appearing were all the instructions given. There is no certificate by the judge or clerk, nor is there a recital in the record or bill from which we can conclude that the instructions contained in the record proper or in the bill were all the instructions given by the court. Therefore we cannot consider the assignments which relate to the giving and refusing of instructions, and we must presume that the court properly applied the law to the facts upon the trial. Moreover, the exceptions taken by the defendant to the instructions claimed to have been given, in no way called the at-

tention of the court to any objectionable matter. The instructions, with one or two exceptions which are unimportant, contain more than one proposition of law; and it has been held by this court that a general exception to an instruction which contains more than one proposition of law is not an exception which entitles the party to have the alleged error reviewed in this court.

Counsel say that subdivision 7 of section 187 of the code requires the judge to file with the clerk the instructions given and the instructions offered and refused, and that inasmuch as the record recites that the instructions which appear therein were filed in the clerk's office, we should presume that the judge complied with the law and filed, as directed by the code, all the instructions given and refused. The statute does require the judge to file the instructions with the clerk, but it also requires him to indorse the instructions, indicating the action of the court. And subdivision 6 of the same section requires that the instructions shall be signed by the judge. The instructions appearing do not bear the signature of the judge, nor do they contain any indorsement, and we cannot indulge the presumption which counsel suggests, that the court has performed his duty and that all the instructions given or refused were filed in the clerk's office. Being unable to determine what instructions were given by the court, we cannot pass upon the questions raised by the refusal of the court to give the instructions which appear in the record.

The code makes it unnecessary that the instructions, with the indorsements, should be made a part of the bill of exceptions; and this court can review instructions which appear in the record with the proper indorsements and bear the signature of the judge, when proper objections and exceptions are preserved by bill. We can also review instructions

which are contained in the bill of exceptions with proper objections and exceptions, and bearing the signature of the judge with proper indorsements; but where it does not appear either from the record or the bill of exceptions that the instructions contained therein are all the instructions given by the court, we cannot consider exceptions or objections made thereto.

For the reason, then, that there is no exception in the bill of exceptions to the judgment rendered, and for the reason that it does not appear that the instructions were all the instructions given, our investigation of this case must be confined to the assignments which relate to the receiving of testimony over the objection of the defendant, and the assignment which alleges that the complaint does not state facts sufficient to constitute a cause of action.

Assignments numbered 43, 46, 47, 48, and 49 relate to the alleged error of the court in permitting the witness S. H. Guyot to testify, over the defendant's objection, but an inspection of the bill of exceptions shows that exceptions were not taken to the ruling of the court.

The witness Guyot was permitted, over the objection of the defendant, to testify to the value of the interests he held in the mining property levied upon under the writs of attachment. He was also permitted to testify as to the value of a one-third interest in the Baltimore and Maryland claims. He was also permitted to testify as to what, if any, effect the levying of the attachments had upon his business, and as to the financial resources and wealth of the defendant, Julia B. French. He was also permitted to testify that although the record title to certain mining claims was in other persons, he was the owner of them, and was permitted to state how he was handling the property. The witness T. C. Bradford was per-

mitted to tell what he had heard people say about the attachment, as affecting the business standing and reputation of the plaintiffs; and the witness L. H. Johnson was permitted to testify that the attachments levied upon the mining property of the Guyots affected their business standing.

After the case was closed, the defendants offered exhibits A, B, C, D, E, F, G, and H. The court refused to receive them, upon the ground that the case had been closed.

The overruling of the objections to the testimony stated herein and the refusal to admit in evidence the lettered exhibits is assigned as error. The amended complaint was not demurred to, and it is objected that it does not state facts sufficient to constitute a cause of action. We cannot agree with counsel. The complaint states in general terms a perfect cause of action, in our judgment. It specifies with some particularity special damages which were sustained by the wrongful seizure under the attachment, and while upon motion the complaint might have been made more specific, it stated a cause of action against the defendant. The suit was brought alleging damages for the malicious prosecution of a suit against the plaintiffs. In suits of that character it is competent to show as an element of damage, an injury to the reputation of the person against whom the suit is prosecuted.—*Lawrence v. Hagerman,* 56 Ill. 69. In such suits it is also competent to show damages sustained by reason of a party being unable to dispose of the property levied upon; and we find no error in the overruling of defendant's objection to this class of testimony. In cases of malicious prosecution it is also competent to show the financial standing and ability to respond to judgment, of the defendant; and the court did not err in permitting the witness Guyot to testify to the financial standing

and wealth of the defendant.—*Courvoisier v. Raymond,* 23 Colo. 113.

The witness Bradford testified to what he heard other people say in reference to the attachment suit, as affecting the business standing and reputation of the Guyots. Upon the trial it was objected that the testimony was hearsay; but in cases of this character, when one's reputation is affected and the effect upon the reputation is made an element of damage, there is no other way to establish the fact.

The lettered exhibits offered by the defendant were refused because not offered until after the case was closed. Such matters are always within the discretion of the court, and we are not disposed to question the correctness of the ruling of the judge.

We are therefore compelled to affirm the judgment.                                    *Affirmed.*