[No. 6160.]

## GRIMES v. GREENBLATT.

1. **Pleading — Complaint — Duplicity** — Where in a single count, the plaintiff charges both malicious prosecution and false imprisonment, he may, under a general denial, prove both causes of action.—(500, 501)

2. **False Imprisonment — Evidence — Responsibility** for a wrongful arrest may be shown by circumstances.—(501)

3. **False Imprisonment—Ratification**—One who, not being responsible for an unlawful arrest upon false charge of crime, being fully informed of circumstances which manifest the innocence of the accused, nevertheless approves the arrest, attempts to prevent the procuring of bail, and makes a complaint before a magistrate charging the crime, is liable to action for false imprisonment.—(502)

4. **Joint Wrong-doers**—Peace officer, who without warrant arrests an innocent person upon suspicion of a crime, and a private person who afterwards, out of mere malice, lays a false charge of the crime before the magistrate, are joint wrong-doers. The injured person may pursue either or both.—(502)

5. **Instructions—To be Read as a Whole**—Error in one part of the charge may be cured by what appears elsewhere therein.—(504)

6. **Appeals—Harmless Error**—In an action for malicious

prosecution an instruction which assumes, contrary to the fact, that defendant has interposed the plea of justification, is harmless.—(505)

So, that the court in its charge, impliedly limited the cause of action to false imprisonment.—(505)

So the refusal of an instruction given elsewhere in form more favorable to the defeated party.—(508)

And the rejection of immaterial evidence.—(511)

7. Malicious Prosecution — Probable Cause — Instructions— The rule that it is the duty of the court to collate the evidence and instruct as to what facts in the particular case constitute probable cause, has no application where there is no evidence of probable cause. Where all the facts which all the evidence tends to prove do not amount to probable cause the court may instruct accordingly.—(507)

8. Evidence—Justice's Docket—The docket kept by one formerly acting as a justice of the peace, and identified by him, is prima facie evidence of the transactions therein set down, no matter by whom it is produced.—(508)

9. False Imprisonment—Evidence to Aggravate Damages— The condition of the jail where plaintiff was incarcerated, and the publication in a newspaper of an account of his arrest, may be shown to aggravate the damages.—(509, 512)

*Appeal from Denver District Court* — Hon. BOOTH M. MALONE, Judge.

Mr. GEORGE S. REDD, Mr. GEORGE STIDGER, and Mr. HARRY S. SILVERSTEIN, for appellant.

Messrs. TALBOT, DENISON & WADLEY, for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

This action was brought by appellee against appellant to recover damages. The complaint alleges that plaintiff was, and for many years had been, a resident of the city of Denver, and engaged in the mercantile business; that he had demeaned himself as an upright and law-abiding citizen, and had obtained, possessed and deserved the good opinion and

credit of the community; that on or about the 7th day of March, the defendant, contriving, and maliciously intending, to injure the plaintiff in his good name and credit, and to bring him into public scandal and disrepute, unlawfully and wrongfully caused his arrest upon a charge of having committed the crime of burglary and larceny, and thereafter on the same day, made and filed a false complaint before a justice of the peace, wherein he charged plaintiff with having committed said crimes by breaking into a certain house, and there stealing, taking and carrying away certain property of defendant; and then and there procured a warrant from said justice for the arrest and detention of plaintiff upon said charge; that said plaintiff was arrested, detained and imprisoned thereon, and confined in the city jail for the period of about ten hours; that the defendant acted maliciously and without reasonable or probable cause; that said proceedings before the justice of the peace terminated in the discharge of plaintiff; that the plaintiff was damaged in the sum of $10,000.00, for which judgment was prayed.

The complaint was in no wise questioned, and the only pleading upon the part of defendant was a general denial. Upon the issues thus made, the cause was tried to a jury, resulting in a verdict for plaintiff, who is appellee here, and a finding that the defendant was guilty of actual malice and fraud. The defendant thereupon filed a motion for a new trial, which, being overruled, judgment was entered on the verdict, together with an award of a body execution against the defendant in accordance with the prayer of the complaint and the finding of the jury. From that judgment the defendant prosecutes this appeal.

The parties to the suit are wholesale junk dealers, plaintiff having been engaged in the business

(32)

in Denver for eleven years, and for about five or six months of that time in partnership with defendant. The partnership was dissolved, because of differences having arisen between them, about ten years before the commencement of this suit. The parties had been on bad terms since the dissolution of the partnership, and for eight or nine years had not spoken to each other. Strong enmity existed between them, and defendant had threatened "to get even" with the plaintiff. Some ten days before plaintiff was arrested, defendant's place of business was burglarized, and certain copper wire taken therefrom; on the day of plaintiff's arrest, defendant in his own conveyance, with certain city detectives, visited several junk shops for the purpose of ascertaining whether the copper wire taken from defendant's premises could be found.

About 2 p. m. plaintiff's shop was visited, and the latter informed of the burglary and theft; plaintiff was unable to say whether he had purchased any copper wire recently, but invited a search through his premises, assisting therein. In one of the bins a sack containing some copper wire was found, which defendant claimed was a part of the stolen wire. Plaintiff upon weighing the wire and inspecting his books, advised that he had purchased it on a certain date from one Samuelson, whose occupation and residence were given. Plaintiff was instructed by the detectives to retain the wire, and promised so to do; thereafter the defendant held a conversation with the officers apart from the plaintiff—the nature of which is not disclosed—whereupon the officers returned and undertook to take the wire, to which plaintiff objected, claiming he did not know that the wire belonged to defendant, and that he would hold the wire until its identity was established. The officers then stated that if they could not take the wire,

they would take the plaintiff, and placed him under arrest and conveyed him to the city hall. Defendant was upon the sidewalk as the officers went by with plaintiff and said: "Why don't you take his partner too?" Upon the arrival of the plaintiff, in the custody of the officers, at the city hall, defendant was in the office of the chief of police, before whom plaintiff was taken; it was then stated by one of the officers that the wire was found in plaintiff's place of business and the latter had refused to give it up; thereupon plaintiff stated that he was responsible, would not run away, and did not propose to give up the wire as he did not know it belonged to the defendant; defendant thereupon said, "He is a g—— d—— liar. He does know it is my copper wire." The officers then locked plaintiff in the jail, in the so-called "bull pen," a foul and filthy cell in which were hobos and tramps, where he remained until 10 p. m., when he was released on bail. Defendant's brother and an officer went in search of Samuelson, finding him where plaintiff had stated he lived; Samuelson identified the wire as the particular wire he had sold the plaintiff, and accompanied the officer and defendant's brother to, and pointed out, the man of whom he had purchased the wire. The man with whom Samuelson had dealt was taken to police headquarters, and there admitted he had stolen the wire from a coal shed, where he had seen two fellows hiding it. Samuelson also, at the request of the officer, reported at the city hall. Upon the arrival of the latter the defendant said to him, "You can go home. We don't need you any more." After the plaintiff's incarceration in the jail, one of the detectives and the defendant returned to plaintiff's place of business and removed the wire. Defendant said to an employee of plaintiff who was endeavoring to get the plaintiff released, "What do you care? Let him stay in there," and

to another employee who had said to defendant, "It is a shame to put a man in jail without making a complaint," "Never mind about that." Thereafter, and with knowledge of all the facts as stated above, the . defendant swore. to, and filed, the complaint charging the plaintiff with burglary, and the larceny of said copper wire. The next day this complaint was dismissed by the district attorney, and two days thereafter the defendant swore to another complaint charging plaintiff with receiving stolen goods. Upon this charge he was tried and acquitted.

Upon many essential points the evidence was conflicting, and the jury, having found for the plaintiff, the facts necessary to support the verdict, as shown by the testimony stated above, must be considered established.

Appellant contends . that the complaint charges malicious prosecution only, and not false imprisonment, and that evidence admitted over his objections and exceptions as to what occurred prior to the filing of the criminal complaint, was improper. He argues that if defendant advised, counseled, or aided in the arrest and imprisonment of plaintiff without a warrant and before a criminal complaint was filed, plaintiff, if he desired to hold defendant therefor, should have set out in his complaint a cause of action for false arrest and imprisonment, and joined it with his action of malicious prosecution.

No doubt the course suggested by appellant would have been the better and proper practice, and if the matter had been properly presented to the trial court, would probably have been imperative. Notwithstanding this rule, the complaint is nevertheless good, under the circumstances of this case, and authorized the plaintiff to prove his cause of action for false imprisonment, as well as for malicious prosecution. Under § 1, Mills' Ann. Code, but one form of

action is recognized. The pleader is required by sec. 49 of said Code to set forth, "A statement of the facts constituting the cause of action in ordinary and concise language without unnecessary repetition." The facts alleged constitute false imprisonment, and likewise malicious prosecution. Whether the action is called, "an action for false imprisonment," or for "malicious prosecution" is of no consequence. We are not concerned with the names which counsel assign to actions. If two causes of action were improperly united and defendant desired to take advantage of that fact, he should have done so by an appropriate pleading. Having failed in that respect he cannot now be heard to complain that the complaint wove together two causes of action in one, when the proof of facts shows him liable for both.— *French v. Deane,* 19 Colo. 504, 506; *Possell v. Smith,* 39 Colo. 127, 130; *Hattersley v. Burrows,* 4 Col. App. 538.

Appellant further argues that as he "was not shown to have caused the plaintiff's arrest or imprisonment" he should not be held liable for any matters occurring prior to the filing of the criminal complaint, and that instructions requested so advising the jury should have been given.

We are persuaded appellant is in error in his assertion that he "was not shown to have caused the plaintiff's arrest, or imprisonment." There was ample evidence to show his participation in such acts. The record is pregnant with facts from which the jury could properly draw such conclusions. It is not necessary that his connection with the arrest should have been shown by direct evidence. It could be inferred from the circumstances of the case.—*Holden v. Merritt,* 92 Iowa 707; *Cook v. Proskey,* 70 C. C. A. Rep. 563; *Gittinger v. McRae,* 89 Md. 513, 517.

But were it true that defendant did not instigate

the arrest, he certainly ratified it, and became responsible therefor upon making the complaint charg-. ing plaintiff with burglary and larceny. At that time he was cognizant of all the facts relative to the stolen wire and plaintiff's possession thereof. From the facts then appearing, and within defendant's knowledge, any reasonable mind would be instantly impressed with the lack of incriminating circumstances against the plaintiff. Under the facts then disclosed, no honest man, of ordinary intelligence, influenced by proper motives, could sincerely have believed the plaintiff guilty of any wrong. Notwithstanding all this, defendant closed his eyes to the rights of the plaintiff, endeavored to prevent him obtaining bonds, and turned the force of the law upon him by the false charge of burglary and larceny.

While it is true the jury would not be permitted to infer ratification from mere silence, it is well established that the act of one committing a tort, such as arresting, or causing the arrest of a person without probable cause, may be ratified by another; and the act is ratified and adopted when such other, with full knowledge of the circumstances of the arrest, makes a criminal complaint against, or assists in prosecuting, the person so arrested.—*Cascarella v. Nat'l Grocer Co.,* 151 Mich. 15; Newell on Malicious Prosecution, §§ 3 and 4; 19 Am. & Eng. Ency. of Law (2d ed.) 692; *Tangney v. Sullivan,* 163 Mass. 166; *Stansbury v. Fogel,* 37 Md. 369, 382; *Cudahy v. Powell,* 35 Ill. App. 29; *Holden v. Merritt, supra.*

No act of any other wrong-doer can relieve the defendant from his liability for wrong done the plaintiff in arresting, imprisoning and charging him with the commission of the criminal offense. Under the circumstances of this case the detectives and officers who personally arrested and placed plaintiff in jail, are to be treated as joint wrong-doers, and the plain-

tiff was at liberty to look to either or all for indemnity.—*Cotton v. Hudekoper,* 2 P. & W. Rep. 149; *Stone v. Dickinson,* 5 Allen 29; *Schluter v. Jacobs,* 10 Colo. 449, 454; *Riethmann v. Godsman,* 23 Colo. 202.

An instruction requested and refused, of which complaint is made, is to the effect that plaintiff could not recover if the jury believed from the evidence that he "in any way caused or consented to his own arrest, or acquiesced therein." An officer testified that plaintiff, in objecting to the surrender of the possession of the wire, said: "No, you take me, but you can't take the wire." It is upon this evidence that defendant bases his right to the refused instruction. Prior to these alleged words of plaintiff, the defendant and officers had knowledge of all the facts relative to plaintiff's possession of the wire. The words used were in the controversy arising over the attempt of the officers to arbitrarily take the wire from plaintiff. We do not consider the language used, under the circumstances, in the slightest degree shows plaintiff's acquiescence in his own arrest. Appellee had an absolute right to retain possession of the wire until it was determined in a proper way that he had no title thereto. That he did not surrender possession to the unlawful demand of the officers in no wise justified his arrest.—*Ryan v. City of Chicago,* 124 Ill. App. 188. The instruction was, therefore, properly refused, there being no evidence upon which to base it.

Other objections we deem proper to notice are urged against the instructions given. It is claimed that, "they imply that defendant caused the arrest of plaintiff." A fair and reasonable consideration of the instructions will not warrant the implication suggested. The instructions fairly leave to the jury to determine from the evidence, whether defendant caused the arrest and imprisonment of the plaintiff.

Instruction No. 15 expressly advised the jury that plaintiff could not recover unless they first found that the plaintiff was prosecuted as alleged in his complaint; that the defendant was the prosecutor or instigated the prosecution, and had no probable cause therefor; that he acted with malice, and that the prosecution had terminated in favor of the plaintiff. In this instruction the court further told the jury that the burden of proof rested upon the plaintiff to establish each of these propositions; that a failure to establish any one of them by a preponderance of the evidence, was a failure to maintain the suit, and if plaintiff had failed in that respect, the finding should be for the defendant. Not only instruction No. 15, which was given at the request of appellant, but throughout the court's charge to the jury the question as to defendant's connection with the arrest and imprisonment of plaintiff, is clearly submitted. The language of instruction No. 6 is, ''that if you believe from the evidence that the defendant, * * *, caused the arrest and prosecution of the plaintiff,'' etc., and practically the same language is used in instruction No. 8. It is quite true that portions of the charge, segregated from the other instructions, might probably be subject to the objection urged, but when read in its entirety the charge does not appear objectionable.

It is argued that the court assumed defendant had presented a defense of justification, and gave an instruction thereon. We presume this objection goes to instructions Nos. 8 and 10. The former tells the jury that if defendant caused the arrest and imprisonment of the plaintiff, acting on the advice of the detectives, it was no justification, while the latter embodies the law applicable to prosecutions instituted upon advice of counsel. Defendant claimed that the arrest and imprisonment of plaintiff was upon the

initiative of the city detectives alone, and that he had
filed the criminal complaint at their request, supple-
mented by that of plaintiff's attorney, who had also
been his, and that he had taken a slip of paper with
defendant's name and the charge of burglary and
larceny written thereon by the city detectives, to the
deputy district attorney, who had prepared the crim-
inal complaint therefrom. Under these circum-
stances we cannot say the instructions were improper.
Moreover, if defendant had no defense of justification
for the arrest, imprisonment and prosecution of plain-
tiff, he certainly cannot complain that the court as-
sumed that he had such a defense and gave an in-
struction applicable thereto.

Defendant further complains, because the court
told the jury in instruction No. 1 that the action was
for damages "alleged to have been sustained by rea-
son of his (plaintiff's) arrest and imprisonment
* * *, which arrest and imprisonment the plain-
tiff claims were caused by the defendant acting
maliciously and without probable cause, and the
plaintiff seeks to recover in this action the damages
which he claims to have sustained *by reason of such
arrest and imprisonment.*" It is said that through-
out the court's instructions it appears that defendant
is charged with the "arrest and imprisonment," or,
"the arrest and prosecution of the plaintiff," and in
defining "probable cause" the language used is,
"probable cause for the arrest" of plaintiff. If the
court limited the cause of action in these instructions
to the arrest and imprisonment, instead of also cover-
ing the fact of malicious prosecution, defendant cer-
tainly cannot predicate error thereon. Defendant is
in no position to complain of an instruction limiting
his liability for the commission of one wrong when
he could properly have been held for the commission
of two. However, we think the instructions fairly

covered the other feature of the case as well. The words "by reason of his arrest and imprisonment" are followed by "upon a charge of burglary and larceny made before" a certain justice of the peace named. The filing of a complaint charging one with the commission of a criminal offense is the first step in a prosecution.

Instruction No. 6 is objected to, because it is said the court referred to the "arrest and prosecution of the plaintiff as in the complaint set forth" and it was nowhere stated in the instructions as to how the matter was set forth in the complaint. The court had previously told the jury that the cause of action was against Ben Grimes for damages alleged to have been sustained by plaintiff by reason of his arrest and imprisonment upon a charge of burglary and larceny made before a certain justice of the peace named; that the arrest and imprisonment plaintiff claimed were caused by the defendant acting maliciously and without probable cause. This sufficiently, in view of all the matters before the jury, presented the issues of the case.

It is next said that the court failed to properly instruct the jury as to what constituted "probable cause." It is affirmed that the two instructions given covering this matter were simply abstract propositions of law on the subject, whereas the jury should have been advised as to what would constitute "probable cause" in this particular case.

The jury were told that "probable cause" is a state of facts and circumstances such as would lead a man of ordinary caution, and prudence, and good conscience, reasonably, impartially and without prejudice, upon the facts within his knowledge, to believe that the person accused is guilty, and if they believed from the evidence that there was no such "probable cause" for the arrest of plaintiff upon the

charge of burglary and larceny, they should so find. The instructions were probably sufficient.—*Murphy v. Hobbs,* 7 Colo. 541, 553.

But were we to determine otherwise, and that it is the duty of the court to specifically collate the evidence and instruct the jury as to what facts, if found, would constitute "probable cause" in the particular case on trial, the rule can apply only where there is some evidence of probable cause. If there be no such evidence the court certainly cannot collate the evidence and so advise the jury. Where there is dispute as to the facts relied on as constituting probable cause, or as showing a want thereof, the determination of such dispute is, like other questions of fact, for the jury, but where all the facts, which all the evidence tends to prove, do not amount to probable cause for the arrest or prosecution, it becomes a question of law to be determined by the court. The court could very properly have instructed the jury in this case that there was no probable cause for the arrest and prosecution of the plaintiff. The facts and circumstances under which defendant acted were not sufficient to justify him as a man of ordinary caution and prudence, to proceed against plaintiff in the manner disclosed by this record.—*Gurley v. Tomkins,* 17 Colo. 437; *Clement v. Major,* 8 Col. App. 86, 87; *Stone v. Crocker,* 24 Pick. 81.

Defendant contends that he was entitled to an instruction which advised the jury as to his theory of the case, and that his requested instruction No. 3, refused by the court, should have been given. This particular instruction ended with: "If you find this claim of defendant to be true, then you may take all these matters into consideration of this case as bearing upon the issues herein as defined to you by the court." Instruction No. 19 given by the court is in the exact language with the one refused, with the

exception of the sentence quoted above. Instead of those words the instruction ended with: "If you find these claims of the defendant to be true, then the plaintiff will have no cause of action against the defendant, and you should find for the defendant." The instruction given, as modified, was more favorable to defendant than the one requested and refused. He certainly cannot complain.

Appellant asserts that the record of the justice of the peace showing the complaint for burglary and larceny against appellee, and his subsequent discharge therefrom on the motion of the district attorney, was not properly identified. The original proceedings were before Justice of the Peace Byrne, who was succeeded by Justice of the Peace Hudson, in whose possession the records then were. Hudson was not called as a witness, but the record was brought in by one Duffy, who described himself as Hudson's clerk, and identified the book as an official record in the office of Hudson. Justice of the Peace Byrne was then called, who testified positively that the book produced was his criminal docket kept by him during his term of office. We think this was a sufficient identification. It is immaterial by whom the record was brought into court. Nor was it absolutely necessary to prove its character by Hudson, the then legal possessor thereof. Byrne had officially made it, and at the time of the trial, knew it was his official act. The docket or record was produced and was shown to have been officially made. It is presumed to be correct and was competent, and *prima facie* evidence of the recitals therein contained.— *Hamill v. Ferrier,* 8 Col. App. 266, 271. A public record may be identified by one who knows the fact and need not be identified by the officer who has the custody thereof.—*State v. Chambers,* 70 Mo. 625,

627; *Sanborn v. School Dist.*, 12 Minn. 17, 29; *Hathaway v. Addison*, 48 Me. 440, 443.

Moreover, appellant, while testifying as a witness in his own behalf, detailed, of his own volition, every fact shown by the record of the justice of the peace. He certainly cannot complain that the court admitted evidence which corroborated his own testimony.

The admission of an account of the arrest of appellee as published in a newspaper is assigned as error. The publication of an arrest in a newspaper is a probable consequence of the arrest, and such publication may be shown in evidence to aid the jury in estimating the damages sustained. In *Minneapolis Threshing Machine Co. v. Regier*, 70 N. W. 934, 936, it is said: "Such a publication is a natural and probable consequence, and a direct consequence of the institution of the prosecution; and the fact that the prosecution resulted in such a publication may properly be shown to aid the jury in estimating the damages."

In *French v. Guyot*, 30 Colo. 222, we held that in an action for malicious prosecution, the plaintiff may recover damages for injury to his reputation, and for the purpose of showing such injury what other people have said in reference to the prosecution may be given in evidence. In that case a witness was called and allowed to testify over objections, what other people had said concerning the alleged malicious attachment. Upon the correctness of that ruling we said: "Upon the trial it was objected that the testimony was hearsay; but in cases of this character when one's reputation is affected and the effect upon the reputation is made an element of damage, there is no other way to establish the fact."

There is no difference in principle between a verbal statement affecting one's reputation and a

published article of the same effect. They differ in degree, and the latter is more far reaching in its effect. The published article is but a public statement made in such a manner that it will reach many persons who might never have heard the spoken words. Appellant does not point out in what way he was injured by the introduction in evidence of the publication. He could not have been injured on the main question at issue; i. e., his responsibility for the arrest and imprisonment of appellee. The publication in no way mentioned his name or connected him with the arrest and prosecution. But, conceding the rule as stated, appellant argues, that it was error to admit the entire publication in evidence, without confining it by instructions to the particular purpose for which it was admitted. The objection interposed to its admission was its incompetency, immateriality and irrelevancy. As it was admissible on the question of damages, the general objection interposed was properly overruled.—*Moynahan v. Perkins,* 36 Colo. 481, 482; *Colorado City v. Smith,* 17 Col. App. 172, 174; *Gilpin v. Gilpin,* 12 Colo. 504, 517.

If appellant desired to limit the extent of the offered evidence, he should have so requested the court. This he failed to do, either at the time of its admission, or by an instruction to the jury.

Appellant next complains that he was not allowed to introduce in evidence a portion of an ordinance of the city of Denver entitled, ''Regulations Concerning Second Hand Dealers.'' The ordinance provides, in substance, that every second-hand dealer shall keep a book in which shall be entered all his purchases; and shall, whenever properly requested, exhibit such book and the personal property described therein, to any police officer of the city; that failure to comply therewith shall subject the offender to a fine. The undisputed evidence shows that ap-

pellee exhibited "such book and the personal property described therein" and in all respects complied with the terms of the ordinance. Besides, the ordinance does not purport to, nor could it lawfully, authorize the seizure by an officer of such goods so exhibited, nor does it pretend to, or could it, authorize the arrest of a person, without a warrant. Moreover, it was not shown that appellee came within the provisions of the ordinance. From every viewpoint, the ordinance was immaterial and its rejection, when offered in evidence, was not error.

The only remaining objection necessary to be considered is, "that the court allowed appellee, over the objection of appellant, to testify as to the filthy condition of the jail, and his sufferings while confined therein." The supreme court of Pennsylvania in *Zebley v. Story,* 12 Atl. 569, has announced the doctrine contended for by appellant that such evidence is inadmissible, but the holding of that court is contrary to the great weight of authority. It is very certain that the true rule adopted, and followed almost unanimously by the courts is, that plaintiff, in actions of this kind, may show the condition of the jail in which he was confined, and the treatment he received therein, as an element of the damages he has sustained.

In *Hall v. Hall,* 85 Mass. 5, an action to recover damages for the illegal arrest and imprisonment of plaintiff, it is held, that plaintiff's "detention in prison and the inconvenience and suffering to which it subjected him, were direct consequences of the illegal acts of the defendant in the service of the warrant of distress; and proof of these facts was, therefore, competent to show the damages he has sustained, and the compensation which he ought justly to recover."

In *Fenelon et al. v. Butts,* 53 Wis. 344, it is held

in an action for false imprisonment, that proof of the filthy condition of the jail used for the imprisonment, is admissible upon the question of damages. It is an elementary rule, that "evidence may be given of the circumstances of plaintiff's family and of the filthy condition of the jail as bearing on the mental suffering resulting from the imprisonment."—2 Sedg. Dam., § 462.

The case of *Zebley v. Story, supra,* has been expressly disapproved by other courts. In *Stoecker v. Nathanson,* 5 Neb. 435, 438, it is said, in speaking of the *Zebley v. Story case:* "It appears, however, that this case is wrong in principle and stands practically alone against the clear weight of authority, both in the United States and in England. The well considered cases on this question hold, with this single exception, that in an action for false imprisonment or malicious prosecution, proof of the circumstances of plaintiff's family and the filthy condition of the jail used for the imprisonment, are admissible to prove special damages."

In *Drumm v. Cessnum,* 61 Kan. 467, 472, it is said: "The case of *Zebley v. Story,* 117 Pa. St. 478, 12 Atl. 569, is cited as an authority. We do not approve the doctrine of that case; it is clearly against the weight of authority. * * * The bad condition of the jail and any other discomfort or deprivation, may be shown in aggravation of damages."

We have examined all the assignments of error presented, and are of the opinion that none of them should be sustained. Appellant has failed to point out any substantial error in the record, and the judgment is, therefore, affirmed.            *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.

Opinion filed February 7, A. D. 1910; rehearing denied April 4, A. D. 1910.