# Swartz *v.* Bortree, Appellant.

*Trespass—Malicious prosecution—Evidence—Burden of proof—Advice of counsel—Nolle pros—Probable cause—Case for jury.*

1. Where, in an action for malicious prosecution, it appears that an indictment found against plaintiff in the criminal proceedings complained of has been nolle prossed, the burden of proof is still upon plaintiff to prove want of probable cause; where, however, there has been a verdict of acquittal, the burden of proof is shifted and it is then incumbent upon defendant to prove that there was probable cause.

2. It is not error, in such action, for the trial judge to permit plaintiff to prove that indictments against him had been nolle prossed, where the court ruled, on the burden of proof, as above, and there was sufficient evidence to justify the conclusion that the nolle prossed indictments had been dropped at the instance of defendant.

3. Where in such case it appeared that plaintiff had been in the employ of a partnership as cashier; that plaintiff under his arrangement with defendant, one of the partners, had the right to take merchandise from the shop charging himself with it, and also to take cash from the money bag on account of his salary, that other persons had access to the bag and that cash therefrom was occasionally given to plaintiff's employer without any record being made of the transaction; that defendant having discovered a supposed shortage in plaintiff's cash account and that certain customers had received goods through plaintiff of which no record was kept, had caused plaintiff's arrest and prosecution for larceny and embezzlement, that certain indictments found against plaintiff were nolle prossed at the instance of defendant and that on other indictments plaintiff was acquitted, and there was evidence that at the time of the institution of the prosecution defendant had not made full disclosure of all the facts to his counsel and to the district attorney, a verdict for plaintiff will not be disturbed.

4. A witness for defendant will not be permitted to give his conclusion upon a comparison of the evidence produced in the criminal trial and that at the malicious prosecution, to show that the proofs were practically the same, where no transcript of the evidence in the criminal case is introduced.

5. The trial judge properly refused a point to the effect that, if the jury believed the evidence of defendant's witnesses, it established probable cause and the verdict must be for defendant, where

plaintiff's evidence, if credited by the jury, while not always contradicting, may be taken satisfactorily to explain away most, if not all, of the incriminating evidence referred to in the point.

Argued Feb. 22, 1916. Appeal, No. 370, Jan. T., 1915, by defendant, from judgment of C. P. Wayne Co., March T., 1913, No. 234, on verdict for plaintiff in case of George W. Swartz v. Floyd Bortree. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for malicious prosecution. Before SEARLE, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,000.00, which was subsequently reduced to $2,037.50 and judgment entered thereon. Defendant appealed.

*Errors assigned,* among others, were in answers to points, rulings on evidence, and in refusing to enter judgment for defendant n. o. v.

*John F. Scragg,* with him *Charles A. McCarthy* and *J. O. Mumford,* for appellant.

*R. H. Holgate,* with him *W. H. Lee, C. P. Searle* and *M. J. Hanlan,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, April 17, 1916:

In this action for malicious prosecution, the verdict favored the plaintiff; judgment was entered thereon, and the defendant has appealed.

In June, 1911, the plaintiff enjoyed a good reputation in the community in which he and his family lived; he was employed by the defendant, who was in partnership with his father; they conducted a general milling business, which averaged about $100.00 per day; each morning a bag containing currency of various denominations,

sufficient to meet the estimated needs of the day, was handed to the person in charge, usually the plaintiff, who was required to deposit therein all receipts, taking out, from time to time, necessary change; a record was supposed to be made of each transaction on a machine called a "duplicator"; the working force consisted of the two partners, the plaintiff, and, occasionally, a brother of the defendant, all of whom had access to the duplicator; when the bag was in the plaintiff's custody, any of the others making cash sales might come to him for change; on occasions the members of the firm asked and received money from the bag without any record thereof being made upon the duplicator, and, at rush moments, mistakes occurred in entries thereon; when properly used, this machine made three copies of each transaction, one of which was given to the purchaser, another placed on a hook in the office, and the third remained on a continuous slip showing an entire day's business; at the close of each day, this slip was placed in the money bag, with the cash, checks and any evidences of indebtedness received, all of which were then handed to one of the partners, usually the defendant, who was supposed to check up mistakes.

The plaintiff entered into the employ of the defendant's firm in 1903, and he seems to have been the general handy man around the place; in addition to this position, he conducted a small poultry business on the piece of land upon which he lived; he was paid $40.00 a month salary, and was granted a reduction in the price of feed personally bought by him; the defendant informed the plaintiff that, when he wanted any feed for his place, he was to "send it up and charge it," and that, when he wanted any money on account of his salary, he was to "take it the same as you do with your feed and charge yourself with it"; the plaintiff said that this was in fact the agreement between him and the defendant, and that "whenever I wanted any feed, flour or anything in the

mill I took it and sent it to my place, and whenever I wanted any money I took it, and once a year we had a settlement"; the testimony of the plaintiff, as to this arrangement and his conduct thereunder was not contradicted by the defendant, although the latter stated that the plaintiff had no right without special permission to take money in advance on his salary, and that he had no right to send feed to his place unless it was charged when delivered; the plaintiff asserted he endeavored to charge everything taken by him but admitted his purchases were not always entered on the very day of their delivery.

In February, 1911, the defendant alleged he discovered a shortage in the cash account of plaintiff, and subsequently became aware that certain customers had received goods through him of which no record was kept on the duplicator; further, that feed was delivered to the plaintiff's own residence without being charged up; the defendant thereupon began to watch the plaintiff and to make inquiries, personally interviewing some of the persons who, he thought, had received goods that were not accounted for; on several occasions he employed a local bank cashier to go over the duplicator accounts and the contents of the money bag, and found that the two agreed, although, as he alleges, on these days cash sales had been made by the plaintiff and not charged on the duplicator; finally, after thus confirming his suspicions, the defendant consulted a lawyer, also the district attorney of the county, and on their advice he had the plaintiff arrested; about the time the defendant took out this first warrant he said to several persons that, if the plaintiff would turn over his property to him, the case could be settled, otherwise, he would send the accused to prison; to other persons the defendant said that he did not think he could make anything out of his charges against the plaintiff; after the first arrest, the defendant was advised that the information filed by him with the

justice of the peace "charged no offense known to the law," and that case was dropped; subsequently the plaintiff was again arrested, and, upon another information, nine indictments were framed, charging him with embezzlement and larceny of money and property, ranging in value from 40 cents to $7.50; the plaintiff was tried on one indictment charging larceny, later on another charging embezzlement, and acquitted in each case; the other cases were nolle prossed; thereupon, he brought the present action for malicious prosecution, and secured a verdict in his favor for $3,000.00, later reduced to $2,037.50, upon which judgment was entered.

The first assignment asserts the court below erred in not giving binding instructions for the defendant. After reading the voluminous evidence produced at trial, we do not feel that this complaint can be sustained. As already indicated, it appears that the plaintiff, under his arrangement with the defendant, had the right not only to take merchandise from the stock of his employer, charging himself with it, but also to take cash from the money bag; it likewise appears that the plaintiff's hand was not the only one dipped in the bag, and that, on occasions, cash therefrom was given to his employers without any record being made of the transactions. Although some of the testimony upon which the facts just stated are based came from the plaintiff, yet certain parts of it were corroborated by the defendant and his witnesses, and, as to other parts, we find no denial; in addition, it does not appear that a full disclosure of these material facts was made either to counsel or the district attorney when they advised the defendant he had probable cause for prosecuting the plaintiff. If the jury credited the evidence we have stated, and their verdict shows they did, then, in view of the acquittals of the plaintiff, and the threats indulged in by the defendant, we cannot say they acted without warrant in believing that full disclosures were not made by the latter to his counsel and

in determining that the prosecution was maliciously brought without probable cause.

The second assignment charges the trial judge erred in refusing to affirm a point to the effect that, "if the jury believes the evidence of the witnesses called for the defendant, it establishes there was probable cause for the prosecution......, and the verdict must be for the defendant." Had the evidence depended upon by the plaintiff simply been a contradiction of that produced by the defendant and his witnesses, then the point before us might properly have been affirmed, but it loses sight of the testimony to which we called attention in disposing of the prior assignment, and which, if credited, while not always contradicting, might be taken satisfactorily to explain away most, if not all, of the incriminating evidence referred to in the request. Hence, a mere belief in the truth of the evidence produced by the defendant was not enough to control the verdict, and the point was properly refused.

The third assignment complains because the trial judge declined to affirm a point to the effect that, if the defendant consulted counsel before bringing the prosecution against the plaintiff, and they advised the issuance of a warrant for his arrest, "this advice of itself establishes probable cause for such criminal prosecution and the plaintiff cannot recover." In declining this point the court said to the jury: "It is for you to say whether he (the defendant) made a proper investigation; it was necessary for him, when he consulted counsel, to state all the facts which he knew, or could reasonably ascertain by proper diligence." As before suggested, it cannot be said as a matter of law that it satisfactorily appears the defendant made a full disclosure to counsel of the actual facts in the case, and, therefore, we see no error in the matter covered by this assignment.

The fourth, fifth and sixth assignments complain because the court below sustained the plaintiff's objection

to certain questions asked the district attorney, and the defendant's counsel, when upon the stand in the defendant's behalf. The interrogatories ruled out simply requested these witnesses to give their conclusion upon a comparison of the evidence produced in the criminal trials and that at bar; in short, to say whether the proofs were "practically the same" on each occasion. There was no attempt to introduce a transcript of the evidence in the criminal cases, and the conclusions sought to be elicited were incompetent and immaterial to the case on trial. We see no error in the rulings here in question.

The seventh and eighth assignments complain because the plaintiff was permitted to prove the fact that certain indictments against him had been nolle prossed. While the court permitted evidence to that effect, yet, at the time, the trial judge expressly stated, "In the case that was dropped there is no presumption of want of probable cause, or in the case where a nolle pros. decree was entered......So far as the case commenced before Squire Pelton and where the nolle pros. decree was entered is concerned, the burden of proof is upon the plaintiff to show want of probable cause; the only case where the burden of proof is shifted is in the case of a verdict of acquittal." The entry of a nolle pros. may be a sufficient ending of a criminal case to entitle a plaintiff to maintain an action for malicious prosecution (Murphy v. Moore, 9 Sadler 64), and the court's ruling, above quoted, amply protected the defendant: see McClafferty v. Philadelphia, 151 Pa. 86, 91; Zebley v. Storey, 117 Pa. 478, 487; 26 Cyc. 60, Sec. 4. In each instance, the evidence indicates the nolle pros. was entered by consent of the court, and there is nothing to show that this was done at the request or with the consent of Mr. Swartz. The defendant, under cross-examination, was asked whether he had not dropped the charges on these bills, but his counsel objected to the question being answered. The

district attorney also was asked concerning the disposition he had made of the indictments in question, and again, on objection of counsel for the defendant, information upon the subject was withheld. The defendant did testify, however, that all of his charges against the plaintiff were "ended" and "out of court"; under these circumstances, there was sufficient to justify the conclusion that each of the indictments upon which a nolle pross was entered had been dropped at the instance of the defendant, and, this being so, no error was committed by the court below in its rulings in relation thereto.

The assignments are all overruled, and the judgment is affirmed.