[Civ. No. 3351. Third Appellate District.—October 22, 1927.]

W. D. KENYON, Respondent, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY (a Corporation), Appellant.

James T. Matlock for Appellant.

Ralph H. Lewis and George E. Foote for Respondent.

FINCH, P. J.—The plaintiff was given judgment against the defendant in the sum of $1,000 as damages for his false imprisonment by W. F. Montgomery, city marshal of Red Bluff, on whose official bond the defendant was surety. The court found, among other things, as follows:

"That . . . the said W. F. Montgomery, acting in his capacity as city marshal of said city of Red Bluff (maliciously and with force), and without an order, or warrant, or process of any court authorizing him so to do, did arrest and imprison and cause to be arrested and imprisoned the plaintiff herein, W. D. Kenyon, and did then and there restrain and deprive him of his liberty on a pretended charge of failing to provide for a wife or minor child, claimed by the said W. F. Montgomery to have been committed by this plaintiff in the state of Oregon, and for no other reason

whatsoever; that thereupon the said W. F. Montgomery, acting in his official capacity aforesaid, did imprison and cause to be imprisoned this plaintiff in the county jail of the county of Tehama, . . . and did there cause the said plaintiff to be restrained of his liberty, without bail and without any provision for bail for the period of five days thereafter; that said W. F. Montgomery did, during all of said time, maliciously and forcibly keep the said plaintiff in his said custody, and restrained and deprived of his liberty without bail, and refused to permit said plaintiff to give bail or be admitted to bail during all of said time; that by reason of said imprisonment and restraint of the liberty of plaintiff, the said plaintiff was injured in his good name and reputation and subjected to humiliation from the citizens of the said county of Tehama and of the county of Sacramento, and among his friends and acquaintances and was thereby damaged in the sum of $1,000.''

The plaintiff testified that at the time of his arrest he was and for three or four years prior thereto had been a resident of Sacramento; that he was then receiving $30 a week and expenses for driving a truck between Sacramento and Redding; that on February 15, 1925, between 3:30 and 4 o'clock in the morning, he was arrested in Red Bluff by the ''night officer'' of that city, Fred Griffith, who ''called the sheriff and made reservations'' for the plaintiff in the county jail, to which he was then taken and ''locked up''; that between 8 and 9 o'clock of the same morning Montgomery appeared at the jail with a circular which contained a description of R. B. Kenyon and a request for his arrest for ''desertion and nonsupport in Polk county,'' Oregon; that the plaintiff demanded an immediate hearing, but received ''no response''; that the sheriff ''stated in the presence of Mr. Montgomery that I was not the man that the circular called for,'' but that Montgomery said ''to hold me in the county jail until he had further orders''; that the plaintiff was held in the county jail for five days; that he then employed an attorney, who procured the issuance of a writ of *habeas corpus* for his release, but that, prior to the time set for the return thereon, Montgomery released him from custody; that the circular contained a picture of R. B. Kenyon, but there was ''absolutely no resemblance whatever'' between the picture and himself; and that he

lost his job by reason of his arrest and imprisonment and was out of steady work for several months thereafter.

The circular to which reference has been made was headed, "$100 Reward," and it contained the following description: "Ross B. Kenyon, age 35, weight 170–180, height 6 feet, ash blond hair with gray mixed through, blue eyes, heavy brows, meeting on bridge of nose; gold bridge work in upper jaw; two gold teeth on each side of two central teeth on upper jaw, no lobes on ears, very broad shoulders." The defendant's eyes are gray. His brows do not meet on the bridge of his nose. He has no dental work in his mouth and no indication of dental work. His teeth are absolutely whole. He has normal lobes on his ears. His shoulders are not unusually broad, but medium only. Montgomery testified that he did not receive this circular until three days after the plaintiff's arrest, but it must be presumed on appeal that the trial court believed the plaintiff's testimony that Montgomery had the circular on the day of the arrest and that his attention was then called to the fact that the description in the circular did not fit the plaintiff. ■ Regardless of such discrepancy, however, the city marshal exceeded his authority in holding the plaintiff without a warrant for a misdemeanor committed in Oregon. (Pen. Code, sec. 836; *In re Milstead,* 44 Cal. App. 239 [186 Pac. 170]; *Miller* v. *Turner,* 49 Cal. App. 653 [194 Pac. 66].)

Appellant contends that the city marshal had nothing to do with the arrest or imprisonment of the plaintiff. ■ The mere fact that the policeman who made the arrest may have been subject to the orders of the city marshal does not make the latter liable for the arrest or imprisonment. (*Michel* v. *Smith,* 188 Cal. 199, 201 [205 Pac. 113].) The case cited, however, recognizes the rule that the superior officer is liable for a false arrest or imprisonment when "he has directed such acts to be done or has personally co-operated therein." Montgomery received a telegram from the sheriff of Polk County, Oregon, on February 14, 1925, requesting the arrest of R. B. Kenyon. He placed the telegram on his office desk and left it there. He testified: "The telegrams and descriptions of people that comes there, I take it and lay it on the office—on the desk, and the night man comes and looks over the telegrams and descriptions

of people and whatever comes in during the day when he comes there at six o'clock. . . . The telegram was there, come just the same as all other telegrams. Mr. Griffith picked up the telegram that night and arrested the man at four o'clock in the morning. . . . I did not see the night man the next morning. He left a note in the jail box saying that he had arrested Mr. Kenyon and taken him to the county jail.'' Montgomery wired the Oregon sheriff, ''We have got your man.'' ▮ Whether or not Montgomery directed the arrest, there is sufficient evidence to show that, almost immediately thereafter, he directed that the plaintiff be held in the county jail, and he is certainly liable for the subsequent false imprisonment. (*Michel* v. *Smith, supra; Adair* v. *Williams,* 24 Ariz. 422 [26 A. L. R. 278, 210 Pac. 853]; *Grimes* v. *Greenblatt,* 47 Colo. 495 [19 Ann. Cas. 608, 107 Pac. 1111].)

▮ Over defendant's objection that ''it is incompetent, irrelevant and immaterial,'' there was introduced in evidence an article published in the ''Sacramento Bee,'' giving a fair and unbiased account of plaintiff's arrest and subsequent release. The publication was a natural consequence of the arrest and imprisonment and the article was admissible to show the damage suffered by the plaintiff. ▮ ''The general rule of law is that whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately brought about by intervening agents, provided such agents were set in motion by the primary wrongdoer, or provided those acts causing the damage were the necessary or legal consequence of the wrongful act. The publication was such a natural, usual, and ordinary consequence of defendant's act (false imprisonment) that it must be deemed to have been contemplated.'' (*Filer* v. *Smith,* 96 Mich. 347 [35 Am. St. Rep. 603, 55 N. W. 1002]; *Burke* v. *Watts,* 188 Cal. 118, 127 [204 Pac. 578]; *Ray Wong* v. *Earle C. Anthony, Inc.,* 199 Cal. 15, 18 [247 Pac. 894].)

▮ On the day of the plaintiff's release from custody he was taken by Montgomery to the office of the district attorney, and there, in the presence of Montgomery, the district attorney dictated and he and the sheriff of Tehama County

signed and delivered to the plaintiff a letter reading as follows:

"To Whom It May Concern:

"The bearer of this letter is Mr. W. D. Kenyon of Sacramento, who was recently detained in Red Bluff on a telegraphic warrant from Dallas, Oregon, for R. B. Kenyon. After investigation by the undersigned it has been clearly established that W. D. Kenyon is not the same person as R. B. Kenyon and Peace Officers detaining him by reason of Oregon circulars, or upon warrant, or request of Oregon authorities for R. B. Kenyon will undoubtedly be laying themselves liable for such detention."

This letter was introduced in evidence over defendant's objection that "it is incompetent, irrelevant and immaterial, and hearsay." It need not be determined whether or not the letter was admissible in evidence. It states no fact which had not already been proved by uncontradicted evidence, and no pretense was made at the trial, and none has been made here, that the plaintiff is the person whose arrest was requested by the Oregon sheriff. The defendant, therefore, could have suffered no prejudice by the admission of the letter.

 It is urged that the judgment is excessive. The language of the trial court in fixing the amount of damages is a fair statement of the case, as follows: "I think I will assess the damages at one thousand dollars. I am quite sure that in doing that I am not making it excessive. The arrest was not technical. It was substantial. The imprisonment was not a mere detention in the city or in an outer room or held for a few hours until his train came in. This man was put in a cell and locked up there for five days, slept on a prison cot, ate prison fare, and suffered the humiliation and mortification and real grief that a man must feel under those circumstances. He lost employment. He lost a job that was remunerative and has encountered a great deal of difficulty in securing another." In *Gomez* v. *Scanlan,* 155 Cal. 528, 533 [102 Pac. 12], it is said: "The amount of money which will compensate one for an unwarranted restraint of his person is not the subject of exact computation. . . . The extent to which the allowance may go must, in large measure, be left to the sound discretion of

the jury." The record in this case shows no abuse of discretion on the part of the trial court in fixing the amount of damages.to be awarded.

The judgment is affirmed.

Burroughs, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 19, 1927.