[Civ. No. 28262. Second Dist., Div. Four. Oct. 26, 1964.]

GENE SHAKESPEARE, Plaintiff and Appellant, v. CITY OF PASADENA, Defendant and Respondent.

Gene Shakespeare, in pro. per., for Plaintiff and Appellant.

Wendell R. Thompson, City Attorney, Hahn & Hahn and Leonard M. Marangi for Defendant and Respondent.

KINGSLEY, J.—This is one of three cases, all arising out of the arrest and imprisonment of appellant and his mother.

Because of factual and legal differences in the cases, we deal with each appeal in a separate opinion.[1]

In the instant case, appellant sued "defendants CITY OF PASADENA, PACIFIC INDEMNITY CO., PASADENA POLICE DEPARTMENT, and OTHERS." The city appeared separately and demurred. The city's demurrers to the original complaint and to a first amended complaint were sustained with leave to amend, its demurrer to the second amended complaint was sustained without leave to amend, judgment of dismissal was entered, and appellant has appealed from that judgment. The appeal comes to us on an Engrossed Statement on Appeal which, although including the body of the several pleadings, omits all captions. The result is that we cannot determine exactly who, beside the city, was made a party defendant and, therefore, it is almost impossible to determine whether or not any of the causes of action other than the first were intended to state a cause of action against the city. However, as the city has done in its brief, we assume that the city was intended as a codefendant in all causes of action attempted to be stated.

The complaint is prolix, full of averments of evidentiary matters, indefinite and confusing. An order sustaining a special demurrer with leave to amend further would have been of unquestioned validity. However, the record shows that the city's demurrer was urged and sustained on the ground of failure to state a cause of action and we address ourselves to that issue alone. Since only the judgment in favor of the city is before us, we express no opinion as to the existence of a cause of action against any other defendant, except as the rights, duties and liabilities of the police officers of the city are necessarily involved in the action against their employer.

██ Reading the complaint most favorably to the pleader, and resolving sundry ambiguities in his favor, the following story appears: Plaintiff's foster brother, DeFrenn, had contracted with Simon Zervos for the purchase of certain real property in the City of Pasadena. Disputes arose between those parties and litigation ensued. DeFrenn contended that

---

[1]In *Shakespeare* v. *Zervos*, 2d Civ. No. 28065, the present plaintiff sued the private citizen involved for false arrest and malicious prosecution. After a verdict for defendant a partial new trial was granted. We dismissed an appeal as premature. In *Shakespeare* v. *City of Pasadena, post,* p. 387 [40 Cal.Rptr. 871] 2d Civ. No. 28263, the mother of the present plaintiff sued the same defendants as are herein involved. In a separate opinion we affirm that judgment for the reasons set forth in an opinion filed concurrently herewith.

Zervos was permitting waste to be committed on the property and obtained a court order authorizing him to enter on the premises for the purpose of protecting his claimed interest in certain particulars set out in that order. DeFrenn executed an instrument in writing appointing plaintiff as his agent to carry out the court order. (It is nowhere alleged that notice of this appointment was ever given to Zervos; whether or not oral notice was given to the police officers at the time of plaintiff's arrest is left to conjecture.) Plaintiff, accompanied by his mother, went to the premises on the afternoon of May 4, 1962. They discovered that one door was unfastened, went to a neighboring house to notify the police, and plaintiff then returned to the premises. When he reached the property, Zervos and police officers were present. Plaintiff and his mother were arrested, jailed, charged with a violation of section 602, subdivision (j), of the Penal Code, tried and acquitted.

I

The city urges that the complaint is fatally defective for not alleging compliance with the claims provisions of the Pasadena City Charter.

The allegation in this respect reads as follows: "In compliance with Article 11 of the Pasadena Charter, on September 6, 1962 Plaintiff filed with the *City Clerk* of the City of Pasadena at 100 N. Garfield Ave., a Claim for $325,750.00 damages of this tort of the City of Pasadena. This claim was presented to the Pasadena Board of City Directors on September 11, 1962, and was referred to the Pasadena City Attorney, and was publicized in the Pasadena Independent of September 12, 1962." (Italics added.)

The applicable provisions of the Pasadena Charter (of which we and the trial court take judicial notice) are as follows:[2]

"*Section 1.* All claims and demands whatever against the City of Pasadena . . . shall be paid only on demands as herein provided."

"*Section 2.* Every demand shall be presented to the City Controller and shall be numbered by him."

"*Section 12.* No suit shall be brought upon any claim for money or damages, whether founded on tort or contract, against the City of Pasadena, or any department thereof, until a demand for the same has been presented as provided herein . . . and rejected in whole or in part."

[2]All sections cited are in article 11 of the charter.

It is obvious that the allegation above quoted is defective in two particulars: It is alleged that the claim was presented to the city clerk rather than to the city controller, and there is no allegation that the claim has ever been rejected, either in whole or in part, by the controller or by the city board of directors. In his brief, appellant refers to his points and authorities filed in the trial court, wherein he had contended: "In Pasadena it is a procedural impossibility for the claimant to file a claim with the City Controller because the City Controller does not file claims on presentation by claimants, but rather refers claimants to the City Clerk. The City Manager also directs claimants to file with the City Clerk, and the City Clerk accepts and files claims in the regular course of business."

While none of these matters appear in the complaint, still, if true, plaintiff could show compliance with the charter requirement, either on the theory that the controller had made the clerk his agent for the receipt of claims, or on a theory of estoppel. No point was made by the city of the failure to allege rejection. Under the circumstances, if plaintiff has a cause of action, and if the city charter provisions are applicable, he should be allowed an opportunity to amend his pleadings to supply these deficiencies if he can and desires to do so. (*Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358].)

However, plaintiff's right to proceed in this action depends not only on the city charter but on the effect of legislation enacted in 1961 and in 1963. (Stats. 1961, ch. 1404; Stats. 1963, ch. 1681.)

Prior to the 1961 legislation just referred to, plaintiff's alleged causes of action, being for intentional acts of the city's officers, were governed by the city charter and not by the general law provisions of section 715 of the Government Code. (*Farnsworth* v. *Cote* (1962) 199 Cal.App.2d 762 [19 Cal.Rptr. 54]; *Whitson* v. *LaPay* (1957) 153 Cal.App.2d 584 [315 P.2d 45].)[3] But, in 1961, following the decision of the Supreme Court in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], (which

[3]The *Farnsworth* and *Whitson* cases were decided with reference to torts committed prior to the 1959 amendments to the general claims statutes. However, it was held in *Hurd* v. *Paquin* (1964) 229 Cal.App.2d 634 [40 Cal.Rptr. 524], that the 1959 amendment had not changed the rule that intentional torts were not covered by the Government Code provisions.

abrogated sovereign immunity in this state) the Legislature enacted a moratorium statute (Stats. 1961, ch. 1404). So far as here pertinent, that act provided as follows:

"Section 1. . . . The doctrine of governmental immunity from tort liability is hereby reenacted as a rule of decision in the courts of this State, and shall be applicable to all matters and all governmental entities in the same manner and to the same extent that it was applied in this State on January 1, 1961. . . .

" . . . . . . . . . . . . .

"Sec. 3. Section 1 of this act shall remain in effect until the 91st day after the final adjournment of the 1963 Regular Session of the Legislature, and shall have no force or effect on and after that date.

"Sec. 4. (a) On or after the 91st day after the final adjournment of the 1963 Regular Session of the Legislature, an action may be brought and maintained in the manner prescribed by law on any cause of action which arose on or after February 27, 1961 and before the 91st day after the final adjournment of the 1963 Regular Session, and upon which an action was barred during that period by the provisions of this act, if and only if both of the following conditions are met: (1) a claim based on such cause of action has been filed with the appropriate governmental body in the manner and within the time prescribed for the filing of such claims in division 3.5 (commencing with section 600) of title 1 of the Government Code, and (2) the bringing of an action was barred solely by the provisions of this act and is not barred by any other provision of law enacted subsequent to the enactment of this act. . . .''

In the light of this statute, as construed in *Corning Hospital Dist.* v. *Superior Court* (1962) 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325], and in *Thelander* v. *Superior Court* (1962) 58 Cal.2d 811 [26 Cal.Rptr. 643, 376 P.2d 571], plaintiff's cause of action was suspended as soon as it arose unless it was given life by the 1963 legislation. Whatever may be the rule as to the retroactivity of the 1963 act on causes of action which accrued prior to the effective date of the 1961 statute, conduct thereafter can, in the light of that act, constitutionally be governed by the 1963 legislation.

By its express terms, the 1963 statutes did not revive any causes of action which were barred on the date (September 20, 1963) when it became effective. (Stats. 1963, ch. 1681, § 45(b).) █ But, whatever its effect on causes of action recognized by the *Muskopf* case and arising prior to the effec-

tive date of the 1961 act (September 15, 1961), the 1961 act clearly applies to causes of action such as are herein involved, which arose, if at all, in 1962. The tentative life given to tort actions by section 4 of that act was conditioned, among other things, on the filing of a proper claim. And the language used, as quoted above, was ". . . a claim based on such cause of action has been filed with the appropriate governmental body in the manner and within the time prescribed for the filing of such claims in division 3.5 (commencing with section 600) of title 1 of the Government Code, . . ."

 It is thus clear that, as to causes of action to which the Government Code sections applied, the conditional state of suspended animation accorded tort claims against municipalities by chapter 1404 existed only where the time limitations of section 715 had been observed. But the statute, insofar as the filing of claims is concerned, dealt only with claims governed by those sections. By the express terms of the statute in question, it is only the requirements *"prescribed* for the filing of *such* claims" which need be met. As we have seen, section 715 did not "prescribe" a time of filing for intentional torts. (*Hurd* v. *Paquin, supra* (1964) 229 Cal.App.2d 634 [40 Cal.Rptr. 524]; *Farnsworth* v. *Cote, supra* (1962) 199 Cal.App.2d 762.) It follows that, no time being "prescribed" in the sections referred to, no observance of their time limitations was required of plaintiff.[4]

We think that this construction accords with the obvious purpose of the moratorium legislation of 1961—namely, to suspend the final decision on substantive matters pending a full legislative study, but (because of the practical need that governmental agencies be promptly advised of potential liabilities, so that the facts could be investigated) to require continued observance of the claims statutes. But we see nothing to suggest that the Legislature intended, nor did the purposes of the legislation involve, imposing on injured parties new or different provisions for giving notice of their claims.

---

[4]No cause of action for malicious prosecution accrues until the criminal case has finally terminated favorably to the plaintiff (*Oppenheimer* v. *Tamblyn* (1958) 162 Cal.App.2d 293 [327 P.2d 574]). The statute of limitations, and the time for filing a claim, do not run until that date. Since plaintiff's claim was filed within 100 days after his acquittal, it was timely no matter how section 4 of the 1961 act is construed, and whether or not the 100-day or the one-year provision of the Government Code section is deemed applicable—a matter discussed more fully hereinafter in this opinion.

Consequently, if the complaint states, or can be amended to state, any cause of action against the city which has survived the 1963 legislation on municipal tort liability, the case should be reversed.

## II

■ It is clear that the complaint states no cause of action against the city for false arrest. As respondent points out, the complaint is not clear as to who made the arrest, but appellant contends in his brief that the arrest was a citizen's arrest made by Zervos, who then delivered custody of plaintiff to the officers.[5] We treat the case on this basis. By express statute, the officers under these circumstances are not liable for their actions (Pen. Code, § 847) and, in fact, the officers would themselves have been criminally liable had they refused to take plaintiff into custody. (Pen. Code, § 142.)

## III

■ Assuming that plaintiff intended, by the second and third causes of action, to state a case for malicious prosecution, it is also clear that no such action lies against the city.

Respondent points out that, by the express terms of the Public Liability Act adopted in 1963, no liability attaches either to a public employee or to his employer for malicious prosecution (Gov. Code, §§ 821.6 and 815.2, subd. (b)), and that that act provides that its provisions shall be applied retroactively "to the full extent that it constitutionally can be so applied." (Gov. Code, Stats. 1963, ch. 1681, § 45.) We discuss below the applicability of this latter section to cases, such as the present one, where the conduct involved occurred after February 27, 1961, and before September 20, 1963. However, we need not here decide whether or not the new sections could constitutionally be applied to deprive plaintiff of a cause of action existing in 1962, for the reason that a long line of cases, decided prior to 1963, had held a police officer and his employer immune from liability for malicious prosecution. (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 582 [311 P.2d 494]; *Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 322 [239 P.2d 876]; *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636]; *Prieth* v. *Dorsey* (1962) 211 Cal. App.2d 468, 469 [27 Cal.Rptr. 476]; *Dawson* v. *Martin* (1957)

---

[5] In the companion case of *Shakespeare* v. *Zervos*, 2d Civ. No. 28065, this plaintiff sued Zervos alleging expressly that the arrest herein involved was a citizen's arrest made by the defendant in that action.

150 Cal.App.2d 379 [309 P.2d 915]; David, *California Municipal Tort Liability* (1934), 7 So.Cal.L.Rev. 302-304.)

Appellant relies on the decision in *Muskopf* v. *Corning Hospital Dist., supra* (1961) 55 Cal.2d 211, as changing the rule of the cited cases. However, the opinion in that case expressly excluded cases such as this from the rejection of the general doctrine of sovereign immunity therein laid down. The court said, at pages 220-221: "Nor does our decision herein affect the settled rules of immunity of government officials for acts within the scope of their authority. . . .

"Government officials are . . . not liable for their discretionary acts within the scope of their authority [citations], even if it is alleged that they acted maliciously [citing *White* v. *Towers, Coverstone* v. *Davies* and *Hardy* v. *Vial, supra*]. Such immunity is not designed to protect the guilty, for 'if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. . . . In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' (Learned Hand, J., in *Gregoire* v. *Biddle,* 177 F.2d 579, 581; see also *Hardy* v. *Vial,* 48 Cal. 2d 577, 582-583 [311 P.2d 494].) Thus this immunity rests on grounds entirely independent of those that have been advanced to justify the immunity of the state from liability for torts for which its agents are admittedly liable."

## IV

■ However, we conclude that the complaint alleges facts sufficient to indicate that plaintiff may have a cause of action against the city for false imprisonment.

The complaint before us alleges (deleting extraneous allegations) in paragraphs XI and XII of the first cause of action: "Late in the morning of May 5, 1962 the police officers whose names are unknown to plaintiff called plaintiff by name, asking if the bail delivered to them should be used for the release of plaintiff's mother who was falsely and maliciously jailed on the same charge. The police officers

represented that only enough money was delivered to free one prisoner. . . .

"In fact, $525.00 bail had been delivered for release of plaintiff and plaintiff's mother both, but plaintiff was not released nor was he informed of this fact, but was further detained in the jail by police officer defendant VERNON FAULSTITCH who interrogated plaintiff, . . ."

Obviously these allegations, without more, are insufficient, since it is not directly alleged that bail had in fact been fixed for plaintiff, either by order of a magistrate or by schedule, nor that the steps necessary to authorize a jailer to release had been taken, nor that the jailers were aware of plaintiff's right to release if, in fact, he was so entitled.

However, if, in fact, bail had been duly fixed for the release of plaintiff, deposited as required by law, the proper certificate delivered to the jailer, and the jailer, knowing of these facts, intentionally[6] failed to advise plaintiff that he was entitled to release, the tort of false imprisonment had been committed. The duty to release, the statutory conditions having been met, is mandatory (Pen. Code, § 1295), and detention thereafter unlawful. (See Note 79 A.L.R. 13.)

While the early authorities held a municipality immune from liability for this tort (see David, *Municipal Tort Liability*, 7 So.Cal.L.Rev. 302-304), that immunity was not based

[6]We intentionally include pleading and proof of intentional detention. Normally, of course, the tort of false imprisonment can be committed by negligent as well as by intentional conduct. But, as we have discussed above, it is only intentional torts which need not satisfy the requirement of section 4 of the 1961 moratorium legislation, under which filing within the period prescribed by section 715 of the Government Code was made a condition of survival. It follows that, insofar as a claim for a negligently committed false imprisonment is concerned, the survival of plaintiff's cause of action depends on whether or not he filed his claim within the time "prescribed" by section 715 of the Government Code. That section prescribes a 100-day limit for claims for "death or for physical injury to the person" and a one-year limit for claims for other torts. There appears to be no judicial decision on the application of that section to the tort of malicious prosecution. However, assistance can be found in the construction of subdivision 3 of section 340 of the Code of Civil Procedure, which established a statute of limitations for injuries to the person. In *Simons* v. *Edouarde* (1950) 98 Cal.App.2d 826, 828 [221 P.2d 203], the court construed the section as applying to a suit for abuse of process, saying that "all infringements of personal rights as opposed to property rights" were included. And in *Oppenheimer* v. *Tamblyn, supra*, (1958) 162 Cal.App.2d 293, the same provision was held applicable to a suit for malicious prosecution. We conclude that the Legislature intended to make the same distinction in section 715 and that, therefore, a claim for a negligently committed false imprisonment would have been barred by the cumulative effect of section 715, section 4 of the 1961 act, and section 45(b) of the 1963 act.

on the principle of discretionary action above discussed, but squarely on the doctrine of sovereign immunity overthrown in *Muskopf* v. *Corning Hospital Dist., supra,* (1961) 55 Cal.2d 211. The present action involves conduct occurring in 1962, the suit was filed in that year and the judgment herein under review was entered July, 1963. We have pointed out above that, by section 45 of the 1963 act, that act is to be applied retroactively "to the full extent that it constitutionally can be so applied," and that, by section 4 of the 1961 statute, a cause of action based on the principle of governmental liability recognized in the *Muskopf* case can now be maintained (assuming compliance with the applicable claims provisions) if it was barred "solely by the provisions of this act [i.e., § 1 of the 1961 act] and is not barred by any other provision of law enacted subsequent to the enactment of this act."

So far as here pertinent, the applicable sections of the 1963 statute are as follows:

Section 815: "Except as otherwise provided by statute:

"(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

"(b) The liability of a public entity established by this part (commencing with section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

Section 815.2:

"(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Section 815.6: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

Section 820: "(a) Except as otherwise provided by statute (including section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person."

Section 820.4: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

Section 821.2: "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

█ Since false imprisonment is specifically exempted from the immunity granted public employees by section 820.4, since section 821.2 applies only to discretionary and not to mandatory acts, and since we can discover no other provision granting an immunity for an intentional false imprisonment, it follows that the general rule of liability set out in sections 815.2 and 820 applies. █ In addition, since, as we have seen, the mandatory duty to release on bail is "designed to protect against" the particular injury herein involved, the city is independently liable under section 815.6.

Prior to *Muskopf*, the court had held that public employees were liable for false imprisonment if they failed to release prisoners when under a duty to do so. In the case of *Kenyon* v. *Hartford Accident & Indemnity Co.* (1927) 86 Cal.App. 269 [260 P. 952], the court awarded damages for false imprisonment against a city marshal. The marshal had held the plaintiff in jail without a warrant for a misdemeanor committed in another state. The court found that he had kept the "plaintiff in his said custody, and restrained and deprived of his liberty without bail, and refused to permit said plaintiff to give bail or be admitted to bail. . . ." Since nothing in the 1963 legislation removes the liability of the jailers for false imprisonment, the effect of section 815.2 above quoted is to impose liability on the city.

The judgment is reversed with directions to allow appellant a reasonable opportunity to amend his complaint, if he can and desires so to do, so as to allege compliance with the claims provisions of the Pasadena City Charter and so as to allege

an action for false imprisonment; otherwise the judgment is affirmed; each party shall bear his own costs on appeal.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied November 12, 1964, and appellant's petition for a hearing by the Supreme Court was denied December 23, 1964. Burke, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.